UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BRET MICHAEL MCBRIDE, | |
| Petitioner, | Case No. 1:14-cv-00176-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Respondent. | |

Before the Court is Petitioner Bret McBride's Petition for Review of Respondent's denial of social security benefits, filed May 8, 2014. (Dkt. 1.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on November 30, 2011, claiming disability beginning October 20, 2009, due to gout, arthritis, obesity, back pain, photosensitivity, fibromyalgia, asthma, sleep

MEMORANDUM DECISION AND ORDER - 1

apnea, and laryngitis. This application was denied initially and on reconsideration, and a

hearing was conducted on December 14, 2012, before Administrative Law Judge (ALJ)

John Molleur. After hearing testimony from Petitioner and a vocational expert, ALJ

Molleur issued a decision on January 25, 2013, finding Petitioner not disabled. Petitioner

timely requested review by the Appeals Council, which denied his request for review on

April 9, 2014.

Petitioner appealed this final decision to the Court. The Court has jurisdiction to

review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was 40 years of age. Petitioner holds a

bachelor's degree and has completed most of the requirements for a master's degree in

communications. Petitioner's prior work experience includes experience as a customer

service/sales representative.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining

whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must

be determined whether the claimant is engaged in substantial gainful activity. The ALJ

found Petitioner had not engaged in substantial gainful activity since he applied for

benefits on November 30, 2011. At step two, it must be determined whether the claimant

suffers from a severe impairment. The ALJ found Petitioner's obesity, degenerative joint

disease of the bilateral knees, photosensitivity, gout, asthma, and obstructive sleep apnea

severe within the meaning of the Regulations. On the other hand, the ALJ found not

**MEMORANDUM DECISION AND ORDER - 2**

severe Petitioner's alleged laryngitis and fibromyalgia, as well as his diagnosed chorioetinitis, vitreous floaters, and myopia.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically Listings 1.02 (major joint dysfunction), 3.03 (asthma), 3.10 (sleep-related breathing disorders), and 14.00 (immune system disorders). *See* 20 C.F.R. pt. 404, subpt. P, App. 1. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner had the RFC to perform a limited range of sedentary work. Accordingly, the ALJ determined Petitioner remained able to perform his past relevant work as a customer/service sales representative in a call center. Based on this finding, the ALJ determined Petitioner was not disabled and denied his application for benefits.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971).

**MEMORANDUM DECISION AND ORDER - 3**

An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision

**MEMORANDUM DECISION AND ORDER - 4**

must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

At the outset, the Court will note what is not at issue in this appeal: the ALJ's finding that Petitioner's statements concerning his symptoms were not "fully credible" is uncontested. (AR 19.) This adverse credibility finding is significant because Petitioner's three arguments on appeal each depend in part on Petitioner's allegations concerning the intensity, persistence, and limiting effects of his symptoms—which the ALJ found "not credible to the extent they are inconsistent with the [RFC] and the medical evidence of record." (*Id*.) Because Petitioner has not challenged these findings, the Court gives great weight to the ALJ's credibility assessment and will limit its review to the issues

MEMORANDUM DECISION AND ORDER - 5

specifically raised in Petitioner's opening brief. *See Rashad,* 903 F.3d at 1231; *see also Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (refusing to "consider any claims that were not actually argued in appellant's opening brief.").

Petitioner contends ALJ Molleur erred at steps two, three, and four. With regard to the alleged error at step two, Petitioner claims ALJ Molleur failed to properly evaluate whether his laryngitis and back pain qualified as severe impairments. In addition, Petitioner alleges the ALJ erred at step three by failing to find Petitioner's degenerative joint disease of the bilateral knees, compounded by his obesity and gout, was medically equivalent to Listing 1.02 (major joint dysfunction). Finally, Petitioner contends the ALJ erred at step four by assessing a RFC that did not account for the combined effect of all Petitioner's impairments. The Court addresses each issue below.

## 1.    Severe impairments

Before an ALJ can find a claimant's impairment severe, the claimant must establish the impairment is "medically determinable." 42 U.S.C. § 423(d), Soc. Sec. Ruling (SSR) 96-4p, available at 1996 WL 374181.[1] To be medically determinable, an impairment must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004–05 (9th Cir. 2005). Reported symptoms alone cannot establish the existence of a medically determinable impairment. *Id*. at 1005; 20

---

[1]     Social Security Rulings do not have the force of law but must be given some deference as long as they are consistent with the Social Security Act and regulations. *Ukolov v. Barnhart*, 420 F.3d 1002, n.2 (9th Cir. 2005). In *Ukolov*, the Ninth Circuit found SSR 96-4p consistent with the purposes of Titles II and XVI of the Social Security Act. *Id.*

C.F.R. § 404.1508. Rather, "a medical opinion offered in support of an impairment must include 'symptoms [and a] *diagnosis*.'" *Id*. at 1006 (quoting SSR 96-6p, available at 1996 WL 374180) (emphasis and alteration in original).

Additionally, a medically determinable impairment is not "severe" unless it "significantly limit[s]" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities include physical functions such as walking, standing, sitting, and lifting; capacities for seeing, hearing and speaking; understanding, remembering, and carrying out simple instructions; using judgment; responding appropriately in a work situation; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). Disability is defined, therefore, in terms of the effect a physical or mental impairment has on a person's ability to function in the workplace. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

A. **Laryngitis**

Substantial evidence supports ALJ Molleur's conclusion that Petitioner's laryngitis was not a severe, medically determinable impairment. (AR 13–14.) In particular, the ALJ accurately noted Petitioner's complaints of chronic laryngitis, hoarseness, or vocal fatigability were not substantiated by objective medical findings. For example, the ALJ highlighted the inconsistency between the medical record and Petitioner's hearing testimony, when Petitioner claimed to have lost his voice completely for six months following an illness in October 2009. During that six-month span, he was seen by three medical providers, none of whom noted Petitioner could not speak or

suffered from any physical abnormality that would establish a medically determinable impairment. Moreover, Petitioner repeatedly spoke to medical providers by phone and in person during the period in question.

During an emergency room visit on October 7, 2009, Petitioner presented with flu-like symptoms and stated "I have a cold and gout but I really just came in for a note for work." (AR 510.) The treating physician noted Petitioner's voice was "mildly hoarse" at that time. After a follow-up in November of 2009, the treating physician cleared Petitioner to return to work without restrictions, noting no hoarseness or vocal symptoms. (*Id*. at 507, 511.) In March of 2010, Petitioner consulted with an otolaryngologist, who performed a laryngoscopy and noted some redness in Petitioner's throat but normal vocal cords. (*Id*. at 500.)

Petitioner continued to complain of hoarseness during several other medical evaluations in 2010 and 2011, but none of these evaluations revealed the cause of the problem or mentioned specific functional limitations related to Petitioner's alleged hoarseness. Likewise, in May of 2012, an otolaryngologist noted Petitioner's reported history of vocal fatigability but found "totally normal nose, pharynx, hypopharynx and laryngeal findings" and did not "see a need for other workup at this time." (*Id.* at 880.) Thus, the medical record substantially supports the ALJ's finding that "no doctors have indicated that the claimant has significant work-related functional limitations due to laryngitis." (*Id*. 14.)

While conceding this is a correct assessment of the medical record, Petitioner

**MEMORANDUM DECISION AND ORDER - 8**

nevertheless asserts his laryngitis prevents him from using his voice more than one or two hours per day. This assertion rests solely on Petitioner's subjective characterization of his symptoms. That characterization is unsupported by clinical findings, undermined by the ALJ's unchallenged adverse credibility finding, and insufficient to establish a medically determinable impairment. "'[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone.'" *Ukolov*, 420 F.3d at 1005 (quoting SSR 94-6p, 1996 WL 374187, at *1). Given the lack of objective medical evidence to corroborate Petitioner's complaints, the ALJ had ample bases for concluding Petitioner's alleged laryngitis was not severe.

### B.    Back pain

On the other hand, the ALJ did not make any express findings regarding Petitioner's alleged back pain. At the hearing before the ALJ, Petitioner mentioned he experienced pain in his back, knees, and wrists. (AR 45.)  In addition, Petitioner's medical records establish that he sought treatment for chronic back pain in 2011 and 2012. In October of 2011, Petitioner described his pain as acute "pulled muscle" pain in his back and across his chest that was worse with deep breathing. (*Id.* at 700.)  However, in November of 2011, his treating doctor noted: "I don't have a good explanation for his symptoms of pain in the lower chest and mid back." (*Id.* at 393.) The etiology of Petitioner's back pain was no clearer after a chest x-ray, chest CT scan, and MRI of his thoracic spine revealed no abnormalities. (*Id.* at 393, 289, 535.) An MRI of his lumbar spine revealed "minimal degenerative changes." (*Id.* at 948.) Similar to Petitioner's

**MEMORANDUM DECISION AND ORDER - 9**

alleged laryngitis, the record contains no diagnosis of a medically determinable impairment that could reasonably be expected to produce Petitioner's alleged back pain—despite repeated evaluations and a battery of diagnostic tests.

ALJ Molleur made no findings, nor did he discuss the medical records, concerning Petitioner's back pain. He did, however, resolve step two in Petitioner's favor, finding Petitioner suffered from several severe impairments and continuing the analysis of Petitioner's claim through step four of the sequential process. When the ALJ proceeds beyond step two, the Court must determine whether the ALJ's failure to evaluate the severity of an alleged impairment constitutes harmless error. *See Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (applying harmless error analysis to ALJ's error at step two). An ALJ's legal error is harmless if it was "inconsequential to the ultimate nondisability determination." *Stout*, 454 F.3d at 1055.

Any error in evaluating Petitioner's complaints of back pain at step two could have prejudiced Petitioner at only steps three (listings analysis) or four (RFC). *See Lewis*, 498 F.3d at 911. With regard to step three, Petitioner does not argue his back pain, alone or in combination with his severe impairments, would meet or equal the requirements of any listing. Instead, his argument concerning Listing 1.02 focuses on the combined effects of his obesity, gout, and knee problems on his ability to ambulate, as discussed below. In addition, Petitioner does not argue his back pain imposed functional limitations beyond those the ALJ incorporated into the RFC at step four. Considering the ALJ's

**MEMORANDUM DECISION AND ORDER - 10**

unchallenged findings regarding Petitioner's credibility, the Court is unable to conclude that the failure to discuss Petitioner's alleged back pain at step two would have altered the ultimate determination. Therefore, any error with regard to Petitioner's alleged back pain was harmless.

**2.     Medical equivalence to Listing 1.02**

At step three, ALJ Molleur found Petitioner's impairments did not meet or equal any listing. Petitioner challenges the ALJ's finding that his impairments were not medically equivalent to the criteria for Listing 1.02, concerning major joint dysfunction. Petitioner claims this finding was erroneous because it did not properly account for Petitioner's degenerative joint disease of the bilateral knees in combination with his other medically determinable impairments, particularly his gout and obesity. While Petitioner concedes he does not meet the criteria for Listing 1.02, he argues his combined impairments hinder his ability to ambulate effectively, thus establishing medical equivalence to the Listing.

If the claimant meets or equals a listing *and* the listed condition meets the twelve month duration requirement, the Commissioner must find the claimant disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant bears the burden of producing medical evidence that establishes all of the requisite medical findings that his impairments meet or equal any particular listing. *Bowen v. Yuckert,* 482 U.S. 137, 146, n.5 (1987). Further, if the claimant is alleging equivalency to a listing, the claimant must proffer a theory as to how his combined

impairments equal a listing. *Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001).

An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant…." 20 C.F.R. § 404.1526(a), (c). Equivalence depends on medical evidence only; age, education, and work experience are irrelevant. *Id.* § 404.1526(c). Likewise, a claimant's allegations of pain or other symptoms are no substitute for medical signs and laboratory findings in the equivalence analysis. *Id.* § 404.1529(d)(3). Finally and critically, "the claimant's illnesses 'must be considered in combination and must not be fragmentized in evaluating their effects.'" *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694-95 (9th Cir. 1985)).

Although obesity is no longer a listed impairment, an ALJ must consider how obesity affects a claimant's other impairments and ability to work. *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir.2003); *see also* Social Security Ruling ("SSR") 02–01p, 2002 WL 36486281 (stating that obesity is a medically determinable impairment and requiring an ALJ to consider the effects of obesity in the five-step sequential evaluation). Because obesity may complicate chronic diseases of the musculoskeletal system, obesity is relevant to the evaluation of musculoskeletal impairments, including major joint dysfunction under Listing 1.02. SSR 02-1p, 2002 WL 34686281, at *3, *5 "If the obesity is of such a level that it results in an inability to ambulate effectively, as defined in

section[] 1.001B2b . . . of the listings, it may substitute for the major dysfunction of a joint(s) due to any cause (and its associated criteria), with the involvement of one major peripheral weight-bearing joint in listings 1.02A." *Id*. at *5.

In relevant part, Listing 1.02 requires major dysfunction of a joint or joints due to any cause:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b

20 C.F.R. pt. 404, subpt. P, App. 1 § 1.02.

The Social Security Administration's regulations define "inability to ambulate effectively" as "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id*. § 1.00(B)(2)(b)(1). Generally, a claimant must have "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities." *Id*. (emphasis added). Examples of ineffective ambulation include:

> the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and

**MEMORANDUM DECISION AND ORDER - 13**

the inability to climb a few steps at a reasonable pace with the use of a
single hand rail.

*Id*. § 1.00(B)(2)(b)(2).

Here, Petitioner proffered a theory of medical equivalence, arguing his obesity and
gout flare-ups exacerbate his medically documented degenerative knee condition to the
point that he cannot ambulate effectively for up to six months each year. The ALJ
acknowledged Petitioner's painful gout flare-ups and found his "obesity is well
documented in the medical record" and "reasonably has some impact on functioning."
(AR 15.) However, the ALJ concluded Petitioner's impairments were not medically
equivalent to Listing 1.02, noting Petitioner had not presented sufficient evidence of an
inability to ambulate effectively. The ALJ's critical finding in this regard is that, despite
evidence that Petitioner experiences pain in his weight-bearing joints and needs a cane or
crutch to ambulate, "the record does not support a finding that he requires two crutches
for one third to one half of the year, as alleged." (*Id*. at 18.) In other words, the ALJ
found Petitioner's alleged inability to ambulate was insufficient as a matter of both
duration and severity to medically equal Listing 1.02. Substantial evidence supports both
conclusions.

First, the ALJ cited substantial evidence that Petitioner's knee pain and gout flare-
ups were controlled with medication. In August and September of 2012, Petitioner
received Synvisc injections in both knees. (*Id*. at 824, 898–901.) Petitioner testified the
injections relieved his knee pain for three to four months but would eventually wear off,

necessitating the use of two crutches until the next injection. (*Id*. at 50–51.) Petitioner also received various medications to treat his gout. (*Id*. at 456, 465, 658, 662, 832, 900.) These treatments succeeded in controlling Petitioner's uric acid levels and greatly reducing the frequency of gout attacks. In fact, there is no evidence of additional gout attacks after September 2012. This record of relatively successful treatment substantially supports the conclusion that Petitioner's gout and knee pain did not impose extreme ambulatory limitations. *See Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006) ("[I]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Second, there is substantial evidence that Petitioner did not experience extreme ambulatory limitations for long enough to meet the duration requirement.  Medical equivalence to Listing 1.02A requires impairments so severe as to impose an "extreme limitation of the ability to walk," 20 C.F.R. pt. 404, subpt. P, App. 1 § 1.00(b)(1), over a continuous twelve-month period. 20 C.F.R. § 404.1520(a)(4)(iii), (d). There is substantial medical evidence that Petitioner needed and was prescribed a single cane or forearm crutch to help him walk. (*E.g*., AR 49–50, 327, 351, 359, 363, 385, 431, 461, 470, 477, 572, 590, 622, 760, 886.) There is also some evidence, largely based on Petitioner's subjective complaints, indicating Petitioner occasionally needed two crutches or canes to walk or was intermittently incapacitated by pain, swelling, and gout flare-ups in his lower extremities. (*E.g*., *id*. at 350, 441, 484, 571.) Significantly, however, each medically documented period of incapacitation or extremely limited ambulation occurred *before*

**MEMORANDUM DECISION AND ORDER - 15**

Petitioner began receiving the efficacious gout and knee treatments noted above. This record of intermittent flare-ups followed by relatively successful treatment constitutes substantial evidence that Petitioner's alleged extreme ambulatory difficulties did not last and could not reasonably be expected to last for a continuous twelve-month period. *See Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).

Third, the ALJ's credibility assessment undercuts Petitioner's argument that his obesity imposes ambulatory restrictions equivalent to Listing 1.02. For example, the ALJ noted that Petitioner's doctors told Petitioner his symptoms would improve with weight loss. Treating physicians observed that weight loss would be beneficial for not only Petitioner's knee pain, but also his back pain, breathing problems, and sleep apnea. But, as the ALJ observed, Petitioner "has been somewhat resistant to this approach." (AR 18.) Despite multiple referrals to weight loss programs, Petitioner either stopped going or outright refused to go on several occasions. (*E.g.*, *id.* at 509, 572, 653, 792, 875.) The record discloses no explanation for Petitioner's failure to follow through with a weight loss program, and the ALJ could properly rely on it as a factor for discrediting Petitioner's claims about the limiting effects of his obesity. *See Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989).

The ALJ's adverse credibility finding is significant, because Petitioner's medical equivalence argument largely depends on Petitioner's statements about how his impairments affect his ability to ambulate. Indeed, there is no medical opinion evidence suggesting Petitioner could not walk a block at a reasonable pace on rough or uneven

**MEMORANDUM DECISION AND ORDER - 16**

surfaces, could not use standard public transportation, could not go shopping, or could not climb a few steps at a reasonable pace with the use of a single handrail. Rather, Petitioner relies on his subjective complaints that walking on rough or uneven surfaces is "just scary" and that he cannot negotiate stairs without using both a handrail and a cane. (AR 50–51.) Not only are Petitioner's descriptions of his functional limitations insufficient to support an equivalence finding in the absence of medical evidence, they are, according to the ALJ's uncontested finding, not entirely credible. Considering the record as a whole, the Court finds substantial evidence supports the ALJ's conclusion that Petitioner's medically determinable impairments were not, in combination, equivalent to Listing 1.02.

### 3.      Residual functional capacity

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past—that is, whether the claimant has sufficient RFC to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a). An ALJ must consider all relevant evidence in the record when making this determination. *Id.*  An ALJ also must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). However, the ALJ need not consider or include alleged impairments that have no support in the record. *Id.*; *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2000) ("Because

MEMORANDUM DECISION AND ORDER - 17

Mr. Osenbrock did not present any evidence that he suffers from sleep apnea, diabetes, organic brain disorder, or hepatitis in support of his disability claim, the ALJ did not err in failing to include these alleged impairments in the hypothetical question posed to the VE.").

Here, the ALJ concluded Petitioner had the RFC to perform a limited range of sedentary work. In addition to a variety of postural, environmental, and exertional limitations, ALJ Molleur specifically accounted for Petitioner's obesity and knee problems by finding he should be limited to only occasional balancing, "requires a cane or single crutch for ambulation," and "should not be required to walk on uneven surfaces." (AR 15.) Petitioner argues this RFC fails to account for the combined effect of his impairments. In particular, Petitioner contends proper consideration of his laryngitis, medication-related fatigue, obesity, sleep apnea, and gout flare-ups would compel the conclusion that Petitioner is disabled.

As explained above, the ALJ properly disregarded Petitioner's complaints of disabling laryngitis. Not only was Petitioner's account of losing his voice for six months inconsistent with his activities and the notes of his medical providers, no diagnosed medical condition substantiated his alleged inability to speak. ALJ Molleur provided similar reasons, supported by substantial evidence, for discounting Petitioner's reports of medication-related fatigue and decreased mental acuity. Significantly, Petitioner has not identified evidence in the medical record suggesting his medications contributed to his fatigue. And, as the ALJ noted, Petitioner's allegations of fatigue and reduced mental

acuity are undercut by the fact that he spent four to six hours per day at the computer. Because Petitioner's alleged laryngitis and fatigue have no support in the record aside from Petitioner's subjective complaints, the ALJ did not err by omitting their alleged functional effects from the RFC. *See Bayliss*, 427 F.3d at 1217.

Petitioner has not identified any other credible, record-supported functional limitations that would preclude the limited range of sedentary work set forth in the RFC. Although Petitioner argues his chronic gout attacks would cause substantial absenteeism inconsistent with fulltime employment, substantial evidence supports the ALJ's conclusion that Petitioner's gout was controlled by medication. As noted above, there is no medical evidence to suggest Petitioner experienced a gout flare-up since September of 2012. Further, the record discloses only two gout attacks in the period between April and September of 2012. Even if this record could be construed in a light more favorable to Petitioner, substantial evidence supports the ALJ's conclusion that Petitioner could perform sedentary work despite his gout.

Petitioner likewise failed to present substantial evidence of additional functional limitations attributable to his sleep apnea and obesity. Aside from his general allegations of fatigue—which the ALJ discredited—Petitioner does not argue that his sleep apnea imposes any work-related functional limitations. Moreover, the RFC includes a variety of limitations to address the mobility and postural limitations imposed by Petitioner's obesity. For instance, the RFC allows for only occasional balancing, no walking on rough or uneven surfaces, and the use of a cane or crutch to assist with ambulation. The ALJ

was not required to account for additional functional limitations based solely on Petitioner's subjective complaints. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). Accordingly, the Court finds substantial evidence supports the ALJ's RFC. Petitioner has not carried his burden to show the record compels more restrictive functional limitations.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED** that the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED**.

Dated: July 14, 2015

Honorable Candy W. Dale
United States Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 20**